UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------

SUNE GAULSH,

                              Petitioner,

              - against -

THE NEW YORK STATE ATTORNEY
GENERAL, ET AL.,

                              Respondents.
--------------------------------------------------

25-cv-7523 (JGK)

Memorandum
Opinion and Order

**John G. Koeltl, District Judge:**

The petitioner, Sune Gaulsh, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and § 2241.[1] Gaulsh asserts that he was denied his federal constitutional rights when a New York County Family Court judge found him in civil and criminal contempt during a child-custody proceeding after he violated the court's earlier visitation order and absconded with his child to Denmark. Gaulsh also moves for a preliminary injunction prohibiting the state from executing the arrest warrant that issued after Gaulsh fled to Denmark.

The respondents move to dismiss Gaulsh's petition pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. For the following reasons, the respondents' motion is **granted**. Gaulsh's motion for a preliminary injunction is **denied**.

--------------------------------------------------

[1] 28 U.S.C. § 2241 generally empowers federal courts to grant a writ of habeas corpus and identifies who may seek it. 28 U.S.C. § 2254 supplies the specific procedural vehicle for persons "in custody pursuant to the judgment of a State court" to challenge the lawfulness of that custody.

# I.

## A.

Gaulsh is the father of a child, L.G., with his former partner, Michelle Mascioli.[2] Verified Pet. Relief from State Contempt Detainers ("Pet.") 12, ECF No. 1. Gaulsh, who is a Danish citizen, lived with Mascioli in Manhattan when L.G. was born in 2011, but the couple separated in 2013 and entered into a parenting plan ordered by the New York County Family Court in 2014. Id. at 12 & n.3. In July 2018, Judge Sweeting of the New York County Family Court awarded Gaulsh sole custody of L.G. and granted Mascioli visitation rights. See id. at 417–18.

On November 10, 2020, the Family Court held a hearing on Mascioli's proposed order to show cause, which she filed because Gaulsh had failed to bring L.G. to a designated drop-off point on November 7 for overnight visitation as ordered during an October 29, 2020 hearing. See id. at 478, 480:7–18, 628. Judge Sweeting ultimately awarded Mascioli "extended parenting time" with L.G. from November 14, 2020 until December 4, 2020, when the parties were next due in court. Id. at 523:18–25. Judge Sweeting further explained that if Gaulsh failed to produce L.G. as the judge instructed, "law enforcement in all

---

[2] The respondents do not have access to the state-court record, and therefore all background facts are drawn from Gaulsh's petition and the accompanying fifty-one exhibits attached to the petition unless otherwise specified. The exhibits are filed as a single document along with the petition and are not separately paginated. The Court therefore treats the petition and exhibits together as a single 691-page document and cites to the exhibits as if they are part of the petition.

states . . . will have the authority to forcibly produce the child, forcibly remove the child from Mr. Gaulsh's care and to take any other appropriate action by way of law enforcement to ensure that the extended parenting time takes place in light of what has transpired." Id. at 524. Judge Sweeting subsequently issued a written order memorializing her instructions and further informed Gaulsh that his "failure to comply with the terms and conditions of this order may result in [his] being held in civil or criminal contempt." Id. at 631 (emphasis and capitalization omitted).

Gaulsh failed to appear at the designated drop-off point on November 14, 2020; Mascioli then filed a petition for a writ of habeas corpus and moved for an order to show cause for contempt. Id. at 527. On November 16, 2020, Judge Sweeting suspended Gaulsh's custody over L.G., awarded temporary custody over L.G. to Mascioli, and prohibited Gaulsh from relocating L.G. from his residence in Pennsylvania. See id. at 535–36. On November 17, 2020, Judge Sweeting, after discovering that Gaulsh had left for Denmark with L.G., issued an arrest warrant for Gaulsh and ordered L.G. returned to the United States. See id. at 545, 551. On November 23, 2020, Judge Sweeting issued a "Declaration of Custodial Rights & Jurisdiction," which stated that Gaulsh had "wrongfully removed the subject minor" from the United States in violation of the court's November 10, 2020 order. Id. at 563–64.

Gaulsh failed to appear for a hearing on December 4, 2020, as directed during the November 10, 2020 hearing. See id. at 587:4–9. During the December 4 proceeding, Judge Sweeting held an evidentiary hearing during which

3

Mascioli testified about Gaulsh's failure to comply with the court's November 10 order. See id. at 602–04. At the conclusion of the hearing, Judge Sweeting found Gaulsh in civil contempt pursuant to Judiciary Law § 753(A) for failing to produce L.G. for visitation as required by the court's November 10, 2020 order and sentenced Gaulsh to six months' imprisonment for civil contempt. Id. at 604–06. Judge Sweeting also found Gaulsh in criminal contempt pursuant to Judiciary Law § 750(A)(3) for failing to comply with the court's November 10 order, purchasing one-way tickets to Denmark for himself and L.G. after the November 10 order issued, and failing to return to the United States with L.G. despite knowing that Judge Sweeting had previously suspended her earlier order granting Gaulsh custody.[3] See id. at 606–08. Judge Sweeting also based her criminal contempt ruling on her finding that Gaulsh had committed perjury by submitting falsified documents to the court. See id. at 608–09. Judge Sweeting sentenced Gaulsh to six months' imprisonment to be served consecutively to the civil-contempt sentence. Id. at 639.

Gaulsh filed notices of appeal in the Appellate Division, First Department, in (1) five cases that were subsequently consolidated into Case No. 2021–0023, and (2) Case No. 2022–05388. On May 31, 2022, the Appellate Division granted L.G.'s cross-motion (filed through the child's attorney) to dismiss the consolidated appeals. Resp'ts' Mot. Dismiss Ex. 1, ECF No. 14-3. On April 11,

---

[3] The hearing transcript cites "Judiciary Law § 758(3)," Pet. 607, but there is no such subsection, and § 750(A)(3) governs criminal contempt for "wilful [sic] disobedience of [a court's] lawful mandate." See also Pet. 638 (written order referring to Judiciary Law § 750(A)(3)).

2023, in Case No. 2022–05388, the Appellate Division granted L.G.'s cross-motion to dismiss that appeal as well. Resp'ts' Mot. Dismiss Ex. 2, ECF No. 14-3. Gaulsh moved for leave to appeal the Appellate Division's dismissal of his consolidated appeals to the New York Court of Appeals. See Resp'ts' Mot. Dismiss Exs. 3 & 4, ECF No. 14-3. The Court of Appeals denied his motion in part and dismissed the motion in part. Id.

**B.**

On May 14, 2021, the federal government filed a criminal complaint charging Gaulsh with one count of International Parental Kidnapping in violation of 18 U.S.C. § 1204(a). See United States v. Gaulsh, No. 21-mj-5195 (S.D.N.Y.). On October 25, 2021, the Serbian government arrested Gaulsh as he traveled across the Hungarian-Serbian border with L.G. Pet. 280; see also United States v. Gaulsh, No. 21-mj-5195, 2025 WL 2711073, at *1 (S.D.N.Y. Sep. 23, 2025).[4] L.G. was returned to Mascioli in the United States, and Gaulsh was kept in custody from October 25, 2021 to May 2022 while the Serbian government determined whether to extradite him to the United States. Id. The Serbian government ultimately declined to extradite Gaulsh and instead released him in May 2022. Gaulsh then returned to Denmark. Pet. 281.

---

[4] Gaulsh moved to dismiss the Government's complaint on the ground that the Government deprived him of his right to a speedy trial under the Sixth Amendment of the United States Constitution. Magistrate Judge Willis granted that motion on September 23, 2025. See Gaulsh, 2025 WL 2711073, at *5–7.

## C.

In July 2022, Gaulsh filed a petition for a writ of habeas corpus in the New York State Supreme Court, New York County, challenging Judge Sweeting's contempt order and arrest warrant. On July 10, 2023, Judge Lucy Billings denied Gaulsh's habeas corpus petition on the ground that the Appellate Division had already denied his request for similar relief in its April 11, 2023 decision. See Gaulsh v. New York Cnty. Family Court, No. 156113/2022, 2023 WL 7291780, at *1 (N.Y. Sup. Ct. July 10, 2023). Judge Billings further stated that "because Gaulsh violated Family Court orders and is a fugitive from justice, the fugitive disentitlement doctrine dictates that the court deny relief" because Gaulsh had "placed himself beyond this court's jurisdiction and may not invoke this court to obtain relief." Id. at *2.

## D.

On September 10, 2025, following the denial of his request for habeas relief from the New York State Supreme Court, Gaulsh petitioned this Court for a writ of habeas corpus. See generally Pet. Specifically, Gaulsh requests that the Court vacate Judge Sweeting's November 23, 2020 and December 4, 2020 "contempt detainers" as unconstitutional.[5] Id. at 6. He also asks that the respondents be permanently enjoined from enforcing those orders. Id. He raises various grounds for relief, including that Judge Sweeting was biased against him, that his contempt sentence was unlawful, and that he was denied

---

[5] Gaulsh styles his petition as one seeking "relief from state contempt detainers," Pet. 1 (capitalization omitted), but nothing in the record shows that the state has lodged a detainer against him. See infra at 10.

his rights to counsel and trial by jury. See id. at 7–9. Gaulsh separately moves for a preliminary injunction preventing New York from executing Judge Sweeting's November 2020 arrest warrant while his habeas petition is pending. See Pet'r's Mot. Prelim. Inj., ECF No. 9. As of the date Gaulsh filed his petition, he was "residing" in "Copenhagen S, Denmark." Pet. 1. The public docket in this action, as well as Gaulsh's subsequent filings, however, indicates that he currently resides in Philadelphia, Pennsylvania. See, e.g., Pet'r's Verified Resp. ("Opp'n") 31, ECF No. 15 (noting that "[t]his court and the State already have Petitioner's address in Philadelphia").

The respondents now move to dismiss Gaulsh's petition pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

## II.

In defending against a motion to dismiss for lack of subject-matter jurisdiction, the petitioner bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the petitioner's favor. See id.; Graubart v. Jazz Images, Inc., No. 02-cv-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).

Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); see also Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. See Kamen, 791 F.2d at 1011.

Finally, the Court must construe pro se pleadings liberally. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### III.

The respondents move to dismiss Gaulsh's habeas petition on two grounds. First, they argue that the Court lacks subject-matter jurisdiction under 28 U.S.C. § 2254(a) and 28 U.S.C. § 2241(c)(3) because Gaulsh is not "in custody" in the relevant sense and therefore cannot seek federal habeas relief. See Mem. Supp. Resp'ts' Mot. Dismiss ("Mot.") 7–14, ECF No. 14-2. Second, the respondents argue that Gaulsh is a fugitive, and therefore the Court should exercise its discretion under the fugitive-disentitlement doctrine to preclude him from invoking the jurisdiction of the federal courts. See id. at 15–20.

As explained below, Gaulsh is not "in custody" within the meaning of the federal habeas statutes, and thus the Court lacks jurisdiction to hear his petition. Because the Court lacks jurisdiction, it need not reach the respondents' fugitive-disentitlement argument.

## A.

For a federal court to have jurisdiction over a habeas petition, the petitioner must be "in custody pursuant to the judgment of a State court" at the time the petition is filed. 28 U.S.C. § 2254(a); see also id. § 2241(c)(3) (same); Maleng v. Cook, 490 U.S. 488, 490–91 (1989) (per curiam) (treating the custody requirements under § 2254(a) and § 2241(c)(3) as identical). Although the "chief use of habeas" is "the release of persons held in actual, physical custody in prison or jail," the Supreme Court has explained "that, besides physical imprisonment, there are other restraints on a man's liberty . . . which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Jones v. Cunningham, 371 U.S. 236, 238, 240 (1963). Thus, to establish custody for purposes of the habeas statute, a petitioner need only show that the petitioner's liberty is subject to "significant restraints" that are "not shared by the public generally." See id. at 240, 242.

The Supreme Court in Jones itself, for example, found that a habeas petitioner was in "custody," even though he was released from imprisonment on parole, because he was subject to explicit conditions. See id. at 242. Likewise, in Hensley v. Municipal Court, San Jose-Milpitas Judicial District, the Supreme Court found habeas jurisdiction where the petitioner was released on his own recognizance before trial but required to appear in criminal court when ordered on penalty of arrest. See 411 U.S. 345, 347, 351 (1973). "The Courts of Appeals," including the Court of Appeals for the Second Circuit, similarly have "recognized that a variety of nonconfinement restraints on liberty satisfy the

9

custodial requirement." <u>Nowakowski v. New York</u>, 835 F.3d 210, 216 (2d Cir. 2016) (collecting cases).

**B.**

The respondents argue in this case that Gaulsh was not "in custody" at the time he filed his habeas petition because he was outside the United States and therefore beyond New York's power to subject him to any actual restraints. <u>See</u> Mot. 12, 17–18. They further contend that although Gaulsh refers to "detainers" in his petition, the record does not show that the respondents ever lodged any detainer against him. Mot. 1 n.1. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." <u>Carchman v. Nash</u>, 473 U.S. 716, 719 (1985); <u>see also</u> <u>United States v. Mauro</u>, 436 U.S. 340, 359 (1978) ("[A] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction."). The respondents note that nothing in the record shows that the state has lodged a detainer against Gaulsh. Mot. 1 n.1. That is unsurprising because Gaulsh was free in Denmark when he filed his petition. <u>See</u> Pet. 1; Opp'n 31.

Gaulsh counters by arguing that the respondents "exercised custody when [they] . . . created the detainer(s) of an unconditional fixed term of incarceration of twelve months." Opp'n 19. To support his argument, Gaulsh relies

10

primarily on the Supreme Court's decision in Hensley and the Court of Appeals's decision in Frazier v. Wilkinson, 842 F.2d 42 (2d Cir. 1988). See Opp'n 19–23. But both of those cases are distinguishable.

In Hensley, the Court found the custody requirement was satisfied where the criminal defendant, who had been sentenced to a one-year jail term, had obtained a stay of his sentence and been released on his own recognizance while he pursued post-conviction relief. See 411 U.S. at 351–52. The Court mainly rested its conclusion on two facts. First, the Court noted that the defendant was at liberty only by virtue of a judicial stay, and "[t]he State ha[d] emphatically indicated its determination to put [the defendant] behind bars, and the State ha[d] taken every possible step to secure that result." Id. "His incarceration [wa]s not, in other words, a speculative possibility that depend[ed] on a number of contingencies over which he ha[d] no control." Id. at 351–52. Second, the Court noted that the defendant, although released, remained "subject to restraints not shared by the public generally"—namely, he was subject to arrest for failure to appear at all times and places as ordered by the court that granted his stay. Id. at 351.

Neither of the conditions in Hensley is present in this case. First, unlike in Hensley, Gaulsh is not free merely because a court has stayed his otherwise imminent detention. He is free because he absconded to Denmark, where he was not subject to the jurisdiction of the State of New York. Crucial to the holding in Hensley was that the only thing standing between the petitioner and detention was a judicial stay, which was conditioned upon the petitioner's

appearance at any place or time ordered by the court on penalty of arrest. See 411 U.S. at 351. The petitioner's "need to keep the stay in force" was thus "itself an unusual and substantial impairment of his liberty," which amounted to custody for habeas purposes. Id. at 352. Gaulsh points to nothing comparable in this case.

Second, Gaulsh is not subject to the supervisory control of the State of New York and thus, unlike the defendant in Hensley, could not be compelled to appear at will on penalty of arrest. The only possible sources of restraint in this case—the only restraints on Gaulsh "not shared by the public generally," id. at 351—are Judge Sweeting's November 2020 arrest warrant and the unexecuted twelve-month contempt sentence. But an arrest warrant, without more, ordinarily is insufficient to establish custody for purposes of habeas jurisdiction. See, e.g., Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 24 (1st Cir. 1991) (per curiam) (noting that case law suggests being subject to an immediate arrest pursuant to an arrest warrant does not constitute custody but declining to decide the issue). Typically, some additional effort by the state to enforce a criminal judgment or arrest warrant is required. Accordingly, "numerous federal courts have reached the same conclusion that an outstanding arrest warrant does not constitute custody for purposes of habeas review." Moore v. Ind. Att'y Gen., No. 25-cv-1077, 2026 WL 395260, at *1 (N.D. Ind. Feb. 12, 2026) (collecting cases). The existence of an arrest warrant does not subject the petitioner to conditions analogous to probation, parole, or release on bond. Id.

Gaulsh attempts to analogize this case to the Court of Appeals's decision in Frazier by arguing that the unexecuted contempt sentence, rather than merely the arrest warrant, is a restraint on his liberty. But Frazier is further afield. In that case, the defendant, then a federal prisoner, filed a petition for a writ of habeas corpus challenging the lawfulness of a state-court sentence that was set to run consecutively with his federal sentence. See 842 F.2d at 43. At the time he petitioned for a writ of habeas corpus, however, the state-court sentence had "not been lodged against him as a detainer." Id. at 44.

The Court of Appeals in Frazier concluded that the petitioner was "in custody" for habeas purposes and could challenge his consecutive state-court sentence, even though no detainer had issued, because there was "a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence"—Queens County—"w[ould] seek its enforcement." 842 F.2d at 45. The Court distinguished its prior decision in Dodd v. U.S. Marshal, 439 F.2d 774 (2d Cir. 1971). In Dodd, a current federal prisoner petitioned for a writ of habeas corpus to challenge a Washington state-court conviction. 439 F.2d at 774. Washington had not, however, lodged a detainer against the petitioner. Id. The Court of Appeals in Dodd concluded that the petitioner was not "in custody" because, "in the absence of a detainer," the Court of Appeals "had no indication from Washington whether that State intended to resume custody over the petitioner." Frazier, 842 F.2d at 45. By contrast, in Frazier, the defendant, although he was not subject to a detainer, was facing a consecutive state-court sentence. The Court of Appeals held that was enough, at least when the

13

petitioner is already in federal custody—"[t]he absence of a detainer should not have the controlling significance in the context of a <u>consecutive sentence</u>" because "the absence of a detainer" in such circumstances "rarely leaves a state's intention in doubt." <u>Id.</u> (emphasis added).

This case is thus distinguishable from <u>Frazier</u>, whose holding rested on (1) the fact that the defendant was already in federal custody <u>and</u> (2) the near-certainty that Queens County would enforce its consecutive sentence once the petitioner's federal sentence expired. Gaulsh is not currently incarcerated, and the inference of near-certain arrest present in <u>Frazier</u> does not carry over to a five-year-old unexecuted contempt sentence against someone who is outside the jurisdiction of the state because there is not the same "reasonable basis to apprehend" that New York will enforce that sentence. Indeed, the respondents represent that, as far as they know, Judge Sweeting's "arrest warrant has never been executed." Decl. Supp. Mot. Dismiss ¶ 5, ECF No. 14-1. Moreover, the respondents note in their brief that "the Attorney General does not represent the Family Court respondents and can make no representations on their behalf regarding whether they will enforce the 2020 arrest warrant" in the future. Mot. 14 n.5; <u>see also</u> Reply Supp. Mot. Dismiss 3, ECF No. 17 ("Petitioner here is not confined to any institution and is free to return home to Denmark at any time. Thus, there is no reasonable basis for concluding that the state <u>could</u> enforce the judgment." (emphasis in original)). Other than the arrest warrant itself, which, as explained above, is insufficient to constitute custody

on its own, Gaulsh points to nothing suggesting New York intends to seek enforcement of Gaulsh's criminal-contempt sentence.

The only restraint on Gaulsh's freedom is that he risks arrest if he ever returns to New York. But the Court of Appeals has distinguished between restrictions that require a person's "physical presence at a particular time and location" "under the threat of further penal sanction" and those that merely prevent a person from traveling somewhere. Vega v. Schneiderman, 861 F.3d 72, 75 (2d Cir. 2017) ("Vega can go anywhere at any time and do anything she wants as long as she avoids [violating the terms of an order of protection]."). The restraint on Gaulsh's liberty posed by an arrest warrant while he is outside New York is therefore, at most, "modest, not severe." See id.

Gaulsh suggests that his decision to relocate from Denmark to Philadelphia after he filed his petition makes enforcement of the arrest warrant more likely. Gaulsh's current location, however, is irrelevant to the custody analysis. The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be in custody under the conviction or sentence under attack at the time his petition is filed." Maleng, 490 U.S. at 490–91 (emphasis added). And there is no doubt that Gaulsh lived in "Copenhagen S, Denmark" at the time he filed his petition. Pet. 1. In any event, extradition is not automatic: New York would still need to take affirmative steps to extradite Gaulsh from Pennsylvania through New York's Uniform Criminal Extradition Act—

15

steps that the respondents concede they have not yet taken and might never take.[6]

Because Gaulsh is not "in custody" within the meaning of § 2254(a) or § 2241(c)(3), the Court lacks jurisdiction over his habeas petition. The respondents' motion to dismiss is therefore **granted**. Furthermore, because the Court lacks subject-matter jurisdiction over Gaulsh's habeas petition, his motion for a preliminary injunction is **denied without prejudice.**

### CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the respondents' motion to dismiss is **granted**. Gaulsh's petition for a writ of habeas corpus is **dismissed without prejudice**. His motion for a preliminary injunction is **denied without prejudice**.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. The Court also declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A)

---

[6] N.Y. Crim. Proc. Law §§ 570.02–570.66; see also 42 Pa. Cons. Stat. §§ 9121–9148 (Pennsylvania's codification of the Uniform Criminal Extradition Act).

16

because "jurists of reason would" not "find it debatable whether the [Court] was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Clerk is respectfully directed to close ECF Nos. 14 and 18 and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           June 23, 2026

_____
John G. Koeltl
**United States District Judge**

17